UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAIDRO ROQUE, | § | CV NO. 1:14-CV-621-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| NEW 888 RESTAURANT, L.L.C. d/b/a | § | |
| 888 PAN ASIAN RESTAURANT, | § | |
| KEVIN LE, and LIEN TRAN, | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE
THIRD AMENDED COMPLAINT

Before the Court is a Motion for Partial Summary Judgment filed by

Defendants New 888 Restaurant, L.L.C. d/b/a 888 Pan Asian Restaurant; Kevin

Le; and Lien Tran (collectively, "Defendants") (Dkt. # 27).  Also before the Court

is a Motion for Leave to File Third Amended Complaint filed by Plaintiff Jaidro

Roque ("Plaintiff") (Dkt. # 25).  The Court held a hearing on the Motions on

September 25, 2015.  At the hearing, Aaron Johnson, Esq., represented Plaintiff;

Nancy Perry, Esq., represented Defendants Kevin Le and Lien Tran; and Brent A.

Devere, Esq., represented Defendant New 888 Restaurant, L.L.C.  After careful

consideration of the supporting and opposing memoranda and the arguments

presented at the hearing, the Court, for the reasons that follow, **DENIES**

1

Defendants' Motion for Partial Summary Judgment and **DENIES** Plaintiff's

Motion for Leave to File Third Amended Complaint.

<u>BACKGROUND</u>

This suit arises out of Plaintiff's employment by Defendants from

June 2012 through March 2013.  (Dkt. # 21 ¶ 9.)  Defendant Kevin Le ("Le") is

married to Defendant Lien Tran ("Tran"), and together they own and manage

Defendant New 888 Restaurant, L.C.C. d/b/a 888 Pan Asian Restaurant (the

"Restaurant"), a Vietnamese restaurant in Austin, Texas.  ("Le Dep.," Dkt. # 29-2

at 22; "Tran Dep.," Dkt. # 29-3 at 8.)  Plaintiff worked for Defendants in the

Restaurant's kitchen as a food preparer.  ("Roque Dep.," Dkt. # 27-3 at 21:10–21.)

Plaintiff alleges he worked approximately 12 hours per day, 6 days a

week.  (<u>Id.</u> at 35:1–13, 55:25–56:3.)  Le served as the general manager and was

responsible for final decisions such as hiring and firing, discipline, and "day-to-day

observ[ing the] operation."  (Le Dep. 22:12–19.)  Le received daily reports from

Tran and "front-of-the-house manager" Ryan Tran.  (<u>Id.</u> at 23:22–24:2.)  Le

monitored the kitchen employees in person and via four cameras installed in the

kitchen, which he could view live from his office, home computer, and phone.  (<u>Id.</u>

at 171:14–174:1.)  Le would sometimes enter through the back and observe the

kitchen staff through his office window so that they would not know he was there.

(<u>Id.</u> at 42:6–43:24.)  Tran herself worked approximately 12 hour days, and spent

about 70% of her time supervising the kitchen.  (Id. at 38:9–39:4; Tran Dep. 8:6–10, 10:8–11.)

Plaintiff, who is homosexual, maintains that he was subjected to verbal sexual harassment by restaurant chefs Kiet Le and Tien "Johnny" Lai starting approximately two months after he started working for Defendants. (Roque Dep. 96:19–97:13.)  Kiet and Johnny called him "puto" and "joto," the Spanish equivalents of "faggot" and "queer," "all the time," as a substitute for Plaintiff's name.  (Id. at 97:6–13, 98:1–7, 127:6–24.)  The two of them told Plaintiff that he "shouldn't act like a woman or what I was."  (Id. 101:11–14.) Johnny mocked and imitated the way Plaintiff walked and talked, and once asked whether Plaintiff had had his genitals cut off in order to fit into his "tight" pants. (Id. at 128:10–129:5.)  According to Plaintiff, Tran observed the abuse but never said anything.  (Id. at 23:14–19, 26:2–8, 129:14–19.)  Plaintiff also testified that Le heard his employees using this language toward Plaintiff.  (Id. at 127:25–128:9.)

At some point, the abuse became physical.  Kiet and Johnny would touch Plaintiff inappropriately, including by slapping his buttocks.  (Id. at 79:7–80:13, 102:14–18.)  On one occasion, Johnny called Plaintiff to the bathroom and showed him his genitalia.  (Id. at 86:7–16, 93:20–94:4.)  On another occasion, when giving Plaintiff a ride home from the restaurant, Johnny repeatedly grabbed Plaintiff's hand and placed it on Johnny's crotch; when Plaintiff refused to

cooperate, Johnny made Plaintiff get out of the car.  (Id. at 73:23–74:13, 75:18–76:13, 91:1–93:16.)  Finally, Le once tried to touch Plaintiff's buttocks and chest, which Plaintiff believed to be intentional because Le laughed and did not say excuse me or apologize.  (Id. at 100:3–11.)

Toward the end of Plaintiff's employment, Enrique, another restaurant employee, tried to force his way into the restaurant bathroom while Plaintiff was in it.  (Id. at 84:12–19, 86:22–87:8.)  Immediately after that incident, Enrique shoved a cart of dirty dishes against Plaintiff and touched Plaintiff's buttocks.  (Id. at 85:3–18.)  Plaintiff then called the police.  (Id. at 84:18–19.)  According to Plaintiff, Le, who was not present during the incident, told police after arriving at the scene that it was Plaintiff who had been causing the trouble.  (Id. at 84:22–85:2.)  On yet another occasion, Kiet and Johnny tried to climb on top of Plaintiff while he was kneeling in the kitchen.  (Id. at 102:20–104:24.)  Plaintiff ended his employment with Defendants the next day.  (Id. at 119:17–24.)

Plaintiff filed an Original Petition in the Second District Court of Travis County, Texas on June 12, 2014, asserting that Defendants failed to pay him the minimum wage and overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), and the Texas Minimum Wage Act, Tex. Lab. Code §§ 62.201, 62.205.  (Dkt. # 1-1.)  Defendants removed the action to this Court on July 7, 2014, on the basis of the Court's federal question jurisdiction.

(Dkt. # 1.)  On September 26, 2014, Plaintiff filed an Amended Complaint adding claims for sex discrimination based on hostile work environment and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  (Dkt. # 9.)  Plaintiff filed a Second Amended Complaint on March 17, 2015, to reflect the fact that Defendant Lien Tran is also known as Lynn Tran. (Dkt. # 21.)

On July 15, 2015, Defendants filed a Partial Motion for Summary Judgment seeking judgment as a matter of law on Plaintiff's sex discrimination claims.  (Dkt. # 27.)  Plaintiff filed a Response in opposition on July 29, 2015. (Dkt. # 29.)  Defendants filed a Reply on August 5, 2015.  (Dkt. # 31.)

Plaintiff filed a Motion for Leave to File Third Amended Complaint on June 19, 2015.  (Dkt. # 24.)  Plaintiff seeks to join plaintiffs Selvin Garcia and Angel Garcia, who also claim that Defendants failed to pay them minimum wage and overtime pay in violation of FLSA.  (Id. at 1.)  Defendants filed a Response opposing the Motion on June 26, 2015 (Dkt. # 25), and Plaintiffs subsequently filed a Reply (Dkt. # 26).

## LEGAL STANDARDS

### I.    Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P.
Enterprises, L.L.C., 756 F.3d 875, 880 (5th Cir. 2014). "Substantive law will
identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986). A dispute is only genuine "if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party." Id.

  In seeking summary judgment, the moving party bears the initial
burden of demonstrating the absence of a genuine issue of material fact. Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden,
the nonmoving party must come forward with specific facts that establish the
existence of a genuine issue for trial. Distribuidora Mari Jose, S.A. de C.V. v.
Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides
Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)). "Where the record taken as a
whole could not lead a rational trier of fact to find for the non-moving party, there
is no genuine issue for trial." Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012)
(internal quotation marks omitted).

  In deciding whether a fact issue has been created, "the court must
draw all reasonable inferences in favor of the nonmoving party, and it may not
make credibility determinations or weigh the evidence." Kevin M. Ehringer
Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves
v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). However,

"[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

II.    Leave to Amend Complaint

Under Rule 15(a) of the Federal Rules of Civil Procedure, if a pleading is one to which a responsive pleading is required, "a party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The language of the rule "evinces a bias in favor of granting leave to amend." Lyn–Lea Travel Corp. v. Am. Airlines, 283 F.3d 282, 286 (5th Cir. 2002). In considering whether to grant or deny leave to amend, the court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party, and futility of amendment." In re Southmark Corp., 88 F.3d 311, 314–15 (5th Cir. 1996); see also Jones v. Robinson Prop. Grp. L.P., 427 F.3d 987, 994 (5th Cir. 2005).

7

<u>DISCUSSION</u>

I.    <u>Defendants' Motion for Partial Summary Judgment</u>

        Defendants seek summary judgment on Plaintiff's claim for hostile work environment sex discrimination on the basis that Plaintiff's supervisors did not know of the harassment, which was engaged in by non-supervisory employees. (Dkt. # 27 at 5.) Defendants further argue that they are entitled to summary judgment because they took prompt remedial action once they were apprised of the harassment. (<u>Id.</u> at 6.) Plaintiff argues that the record establishes a genuine dispute of material fact as to whether Le and Tran knew their employees were sexually harassing Plaintiff, and that summary judgment must therefore be denied.[1] (Dkt. # 29.)

---

[1] Under Fifth Circuit precedent, Title VII does not impose individual liability for employment discrimination, and a Title VII suit against an employee "is actually a suit against the corporation." <u>See</u> <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258, 262 (5th Cir. 1999). As a result, "a party may not maintain a suit against both an employer and its agent under Title VII." <u>Id.</u> Defendants did not raise this issue in their briefs, and the record does not include evidence of Plaintiff's formal employment arrangement with Defendants. The affidavits of Le and Tran indicate that they are co-owners, co-managers, and employees of the Restaurant. ("Le Aff.," Dkt. # 27-1 at 1; "Tran Aff.," Dkt. # 27-2 at 1.) If Plaintiff's formal employer was indeed the Restaurant, rather than Le or Tran, his Title VII claims against Le and Tran would have to be dismissed. If, however, Plaintiff was not formally employed by the Restaurant and was in fact employed by Le and/or Tran, Plaintiff would be able to recover against Le and/or Tran in their individual capacity or capacities as Plaintiff's employers. Without evidence with which to resolve the issue, the Court will continue to refer to all three Defendants collectively.

Title VII makes it "an unlawful practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1).  The "ultimate question" in every Title VII case is whether the plaintiff has proven that the defendant intentionally discriminated against him because of a protected characteristic.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). "It is well-established that a plaintiff can satisfy Title VII's because-of-sex requirement with evidence of a plaintiff's perceived failure to conform to traditional gender stereotypes." Eure v. Sage Corp., 61 F. Supp. 651, 660 (W.D. Tex. 2014) (quoting E.E.O.C. v. Boh Bros., 731 F.3d 444, 454 (5th Cir. 2013)).

To make out a claim for hostile work environment under Title VII, a plaintiff must show that he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on membership in the protected group; (4) the harassment complained of affected a term condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 401 (5th Cir. 2013) (citing Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 651 (5th Cir. 2012)). Only the fifth element is at issue here: whether Defendants knew or should have

known of the harassment to which Plaintiff was subjected, and whether they took prompt remedial action.

    A.    <u>Actual or Constructive Knowledge</u>

    An employer is subject to vicarious liability to an employee for an actionable hostile work environment created by a supervisor with immediate, or successively higher, authority over the employee. <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 777 (1998). An employee is a "supervisor" for purposes of vicarious liability under Title VII if he or she is empowered by the employer to effect a significant change in the victim's employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. <u>Vance v. Ball State Univ.</u>, 133 S. Ct. 2434, 2443 (2013). If the harassing employee is the victim's co-worker, by contrast, "the employer is liable only if it was negligent in controlling working conditions." <u>Id.</u> at 2439.

    Here, only Le and Tran were supervisors as defined by the Supreme Court in <u>Vance</u>. While Kiet and Johnny, the primary perpetrators of the harassment, were referred to as "chef managers" or "team leaders," (Le Dep. 23:18–24:23), only Le and Tran had the power to hire, fire, and make other significant employment decisions, (<u>id.</u> at 23:9–17; Le Aff. at 1; Tran Aff. at 1). Plaintiff argues that the Restaurant should nevertheless be held vicariously liable

for the hostile work environment because Le himself participated in the harassment.  (Dkt. # 29 at 2–3.)  Plaintiff's argument is supported by record evidence that Le once tried "to touch [Plaintiff's] butt and chest;" Plaintiff "thought it was intentional because he laughed and he didn't say excuse me or anything like that."  (Roque Dep. 100:3–11.)  Plaintiff also testified that Le once used the word "puta," although Plaintiff did not know "if he was saying it directly to me."  (Id. at 128:3–9.)

These two incidents alone, however, do not constitute harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 401 (5th Cir. 2013).  While "isolated incidents, if egregious, can alter the terms and conditions of employment," Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 435 (5th Cir. 2005), "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 328 (5th Cir. 2004) (internal quotation marks omitted).  The record here indicates that restaurant chefs Johnny and Kiet were responsible for the vast majority of Plaintiff's harassment, and that Le's involvement was limited to two isolated incidents, one of which was not clearly directed at Plaintiff.  Because the record evidence does not support a

11

dispute of fact as to whether Le himself engaged in harassment so severe as to create an abusive work environment, Plaintiff cannot hold the Restaurant vicariously liable for a hostile work environment based on Le's harassment.

       As a result, to defeat summary judgment, Plaintiff must establish a dispute of material fact as to whether Defendants were negligent in failing to prevent Plaintiff's unlawful harassment.  An employer may be liable for sexual harassment if it "knew or should have known of the harassment in question and failed to take prompt remedial action."  Sharp v. City of Houston, 164 F.3d 923, 929 (5th Cir. 1999).  "A title VII employer has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action to remedy the problem."[2]  Id.  Alternatively, an employer may be held liable if it had constructive notice of harassment—if, through the exercise of reasonable care, it should have known what was going on but failed to address it.  Id. at 930. An employer has constructive notice where "the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes."  Id.  Additionally, "the nature and degree of authority wielded by the harasser is an important factor to be considered in determining whether the employer was negligent."  Vance, 133 S. Ct. at 2451.

_____

[2] A manager, for the purpose of this standard, is a person who can hire or fire the offending employee, take disciplinary action, provide "significant input" into employment decisions, direct the harassing employee to stop his behavior, or implement other remedial action.  Sharp, 164 F.3d at 929.

Here, there is more than enough evidence in the record to establish a genuine dispute of fact as to whether Le and Tran knew or should have known of the hostile work environment to which Plaintiff was subjected.  First, Defendants' own testimony establishes that Tran was present in the restaurant for approximately 12 hours a day, and spent approximately 70% of her time directly supervising the kitchen.  (Le Dep. 38:9–39:4; Tran Dep. 8:6–10, 10:8–11.)  Le, for his part, monitored the kitchen employees both in person and via four cameras that provided him with a live feed of the kitchen that he could view from his office, home computer, and phone.  (Le Dep. 171:14–174:1.)  Le testified that he sometimes entered through the back in order to observe the kitchen staff surreptitiously.  (Id. at 42:6–43:24.)  In light of Plaintiff's testimony regarding the pervasiveness of the harassment—including being called "puto" and "joto" "all the time," as a substitute for his name; being mocked and imitated for the way he walked and talked; and being touched inappropriately, including being slapped in the buttocks—the amount of time that Le and Tran spent supervising and otherwise observing their kitchen employees supports a genuine dispute of fact as to whether they actually knew, or at least should have known, of the harassment.

Second, Plaintiff testified that Tran observed the harassment and knew what was going on.  Specifically, he stated that Tran observed Johnny and Kiet mocking the way he walked and talked (Roque Dep. 129:14–19), knew about the

13

incident in which Johnny and Kiet jumped on top of him (id. at 102:24–103:2), and that Tran generally would have observed the conduct because she worked in the same immediate vicinity as Plaintiff (id. at 23:14–19, 26:2–8).  This testimony alone is sufficient to create a genuine dispute of fact as to whether Tran knew of Plaintiff's harassment.  Third, Johnny and Kiet were "team leaders" or "chef managers" who reported daily to Le and were viewed as managers by Plaintiff and other kitchen staff; further, Kiet is Le's brother.  (Le Dep. 23:18–24:23, 60:15–21; Roque Dep. 117:4–6.)  The primary harassers' relatively high level of authority further supports finding a genuine dispute of fact as to whether Defendants were negligent in permitting Plaintiff's harassment to occur.  See Vance, 133 S.Ct. at 2451.

Finally, Plaintiff's testimony that Le himself engaged in the harassment—by once trying to touch him inappropriately and laughing about it, and by using the term "puta"—is further evidence that Plaintiff's supervisors knew of the harassment.  While Le and Tran attest that Plaintiff never informed them that he felt sexually harassed, and that they never observed a situation in which Plaintiff "exhibit[ed] any physical manifestation of discomfort with his surroundings at the restaurant or with the individuals he was working with," they do not directly deny having observed the conduct complained of by Plaintiff.  (Le Aff. at 1; Tran Aff. at 1.)  Even if they had, Plaintiff's evidence is more than

14

sufficient to create a genuine dispute of fact as to whether Defendants knew or should have known of the harassment, and Defendants are therefore not entitled to summary judgment on this basis.[3]

      B.     <u>Prompt Remedial Action</u>

      Defendants further argue that they are entitled to summary judgment because they took prompt remedial action.  "When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability."  <u>Harvill v. Westward Comm'cns, L.L.C.</u>, 433 F.3d 428, 437 (5th Cir. 2005) (quoting <u>Nash v. Electrospace Sys., Inc.</u>, 9 F.3d 401, 402 (5th Cir. 1993)).  "Prompt remedial action must be reasonably calculated to end the harassment."  <u>Id.</u> (quoting <u>Skidmore v. Precision Printing & Packaging Inc.</u>, 188 F.3d 606, 615–16 (5th Cir. 1999)).

---

[3] Defendants argue that Le and Tran were "wholly unaware" of any harassment and point to Plaintiff's testimony that he never reported the harassment to Le or Tran.  (Dkt. # 27 at 5.)  While Plaintiff testified that he "never said anything to . . . Ms. Lien or Mr. Kevin [Le]" about being called "puto" and "joto" and answered no when asked whether he ever complained to Le or Tran about Johnny's harassment, (Roque Dep. 84:2–6, 98:8–14), this evidence does not establish that Le and Tran did not know, or should not have known, of the harassment.  As discussed above, the testimony regarding Le and Tran's close supervision of the kitchen employees, in addition to Plaintiff's testimony that they observed and knew of the harassment, creates a genuine dispute of fact as to whether Le and Tran either knew or should have known of their employees' unlawful conduct toward Plaintiff.  Indeed, viewing the record in the light most favorable to Plaintiff as the nonmoving party, the evidence indicates that Plaintiff did not report this conduct because his supervisors observed it and did nothing to stop it, leading him to believe that complaining about the harassment would be futile.  (<u>See</u> <u>id.</u> 84:2–11, 90:12–18.)

While "an employee must take advantage of corrective opportunities provided by the employer," if an employee believes that bringing a complaint "would be futile, or it becomes objectively obvious that the employer has no real intention of stopping the harassment, the harassed employee is not obligated to go through the wasted motion of reporting the harassment." Id. (quoting Woods v. Delta Beverage Grp., Inc., 274 F.3d 295, 300–01 (5th Cir. 2001)). "Whether an employer's response to discriminatory conduct is sufficient will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." Hirras v. Nat'l R.R. Passenger Corp., 95 F.3d 396, 399–400 (5th Cir. 1996) (internal quotation marks omitted).

Defendants argue that upon learning of Plaintiff's harassment after the incident in which Plaintiff called the police, they took prompt remedial action by speaking to all employees and "reiterat[ing] the policy that we did not tolerate horse play or any form of inappropriate conduct and inform[ing] all that that kind of behavior would not be tolerated." (Le Aff. at 2; Tran Aff. at 2.) The record supports a genuine dispute of fact, however, as to whether Defendants' remedial action was "prompt." Plaintiff's testimony reflects pervasive sexual harassment beginning approximately two months after Plaintiff began working and ending only when he left Defendants' employ approximately eight months later. While the record is unclear as to when exactly the incident involving the police occurred,

it does reflect that it happened near the end of Plaintiff's employment with Defendants.  (Roque Dep. 89:19–90:3, 95:16–96:5 (stating that the incident involving the police occurred toward the end of Plaintiff's employment).)  Given the evidence, discussed above, that Plaintiff was being subjected to daily harassment by Johnny and Kiet, and that Le and Tran knew or should have known of this harassment, there is also a dispute of fact as to whether the remedial action taken by Defendants—months after the harassment began—qualifies as prompt.

Defendants further argue that Plaintiff's failure to report the harassment to Defendants precludes his hostile work environment claim as a matter of law.  This argument, however, misstates the law.  As noted above, a plaintiff is not required to formally report harassment to his employer "if he believes that bringing a complaint would be futile, or it becomes objectively obvious that the employer has no real intention of stopping the harassment."  Harvill, 433 F.3d at 437.  Plaintiff repeatedly testified that he did not report the harassment to Le or Tran because he believed they would take the side of his harassers or would not believe his allegations—in short, that reporting the harassment would be futile.  (Roque Dep. 76:14–18, 84:2–11, 90:12–18.)  Plaintiff's belief is supported by evidence in the record indicating that Le and Tran observed (and in Le's case, even participated in) the harassment but took no action to curb it—if his supervisors saw the harassment and did nothing, it is understandable that Plaintiff would believe

17

that bringing it to their attention again would not result in a different outcome. Additionally, the evidence that his supervisors observed the harassment but took no action creates a genuine dispute of fact as to whether it was "objectively obvious" that Plaintiff's employer had no intention of stopping the harassment.

The Court further notes that given the evidence of the pervasiveness of the harassment, it is questionable whether Defendants' remedial action—telling all employees that "horse play and any form of inappropriate conduct" would not be tolerated—was, as a matter of law, reasonably calculated to end the harassment. The Fifth Circuit has found that employers took prompt remedial action where they conducted a prompt, thorough investigation, and took disciplinary or other measures intended to end the harassment where appropriate.  See Waymire v. Harris Cnty., 86 F.3d 424, 428 (5th Cir.1996) (finding prompt remedial action where employer conducted an investigation within a week of discovering the offensive conduct and issued a formal reprimand to the person responsible); Carmon v. Lubrizol Corp., 17 F.3d 791, 794–95 (5th Cir.1994) (finding prompt remedial action where the employer investigated harassment complaints, reprimanded the person responsible and transferred him to another shift, and issued a memorandum and held meetings to educate employees regarding appropriate workplace behavior); Nash, 9 F.3d at 404 (finding prompt remedial action where employer investigated the complaint and transferred the plaintiff to another

18

department, with no loss of benefits, to avoid contact with the alleged harasser). The Fifth Circuit has further considered "whether the offending behavior in fact ceased." Skidmore v. Precision Printing & Packaging, 188 F.3d 606, 616 (5th Cir. 1999).

Here, Defendants do not claim to have conducted an investigation,[4] disciplined the alleged perpetrators of the harassment, or taken any other measures to end Plaintiff's harassment beyond a single meeting with all employees to inform them that inappropriate behavior would not be tolerated. Further, the offensive behavior appears to have continued after the meeting. Plaintiff testified that the incident in which Johnny and Kiet climbed on top of him in the kitchen occurred the day before he left Defendant's employment. (Roque Dep. 119:17–24.) The record is therefore insufficient to find that Defendants' remedial action was reasonably calculated, as a matter of law, to end Plaintiff's harassment, and Defendants are not entitled to judgment as a matter of law on this basis.

C.   Constructive Discharge

Defendants also argue that Plaintiff's failure to report his harassment to Le and Tran precludes Plaintiff's constructive discharge claim. (Dkt. # 27 at 7.) A claim for constructive discharge, however, does not require that an employee

---

[4] If Le and Tran were already aware of Plaintiff's harassment, they may not have needed to conduct such an investigation; Defendants, however, maintain that they were unaware of any harassment directed at Plaintiff.

provide notice to his employer before resigning.  "To prove a constructive

discharge, a plaintiff must establish that working conditions were so intolerable

that a reasonable employee would feel compelled to resign." Brown v. Kinney

Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) (quoting Faruki v. Parsons, 123

F.3d 315, 319 (5th Cir. 1997)).  "Constructive discharge requires a greater degree

of harassment than that required by a hostile environment claim," and

"[d]iscrimination alone, without aggravating factors, is insufficient." Id.

        The inquiry into whether a reasonable employee would have felt

compelled to resign is thus separate from the question of whether an employer

negligently permitted the creation of a hostile work environment.  While an

employer's knowledge of the harassment is relevant to the latter, it has no bearing

on the former.  Defendants have submitted no other argument challenging

Plaintiff's claim for constructive discharge, and have not shown they are entitled to

summary judgment on this claim.

        In sum, Defendants have failed to establish that there is no genuine

dispute of material fact regarding Plaintiff's claim for hostile work environment.

The Court therefore **DENIES** their Motion for Partial Summary Judgment on that

claim.  Additionally, because Defendants have failed to establish either the absence

of a dispute of material fact or that they are entitled to judgment as a matter of law

20

on Plaintiff's claim for constructive discharge, the Court **DENIES** their Motion for

Partial Summary Judgment on that claim as well.

II.     Plaintiff's Motion for Leave to Amend Complaint

On June 19, 2015, Plaintiff requested leave to file a Third Amended

Complaint in order to add FLSA claims on behalf of two new plaintiffs, Angel

Garcia and Selvin Garcia (collectively, the "Garcias").[5]  (Dkt. # 24.)  Under the

scheduling order governing this action, which was issued before the action was

transferred to this Court, the deadline for joinder of parties and amended pleadings

was March 9, 2015.  (Dkt. # 18.)  The addition of the Garcias' claims would also

require additional discovery; the discovery deadline under the scheduling order

expired on February 27, 2015.  (Id.)

Defendants oppose Plaintiff's request to amend his complaint in order

to add the Garcias' FLSA claims, arguing that Plaintiff has not shown the good

cause required to modify a scheduling order deadline under Federal Rule of Civil

Procedure 16(b)(4) and that the addition of two parties would prejudice Defendants

by requiring them to incur the expense of taking additional depositions.  (Dkt. # 25

at 2.)  Defendants further argue that joinder of the additional plaintiffs would be

improper under Federal Rule of Procedure 20.  (Id. at 3.)

---

[5] Because Plaintiff's amendment seeks to add new FLSA claims and does not
affect his Title VII claims, Defendants' Motion for Partial Summary Judgment
does not affect Plaintiff's Motion for Leave to Amend.

The "lenient standard" for amending a complaint under Federal Rule of Civil Procedure 15 "does not apply if an amendment would require the modification of a previously entered scheduling order." Filgueira v. U.S. Bank Nat'l Ass'n, 734 F.3d 420, 422 (5th Cir. 2013). After a scheduling order deadline for amending a complaint has expired, Rule 16(b) governs the amendment of pleadings. Id. Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Under this standard, a party must show "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." Fahim v. Marriott Hotel Servs., Inc., 551 F.3d 344, 348 (5th Cir. 2008). In determining whether there is good cause to modify a scheduling order, courts consider "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." Id. (quoting Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003)).

Here, the factors taken together weigh against extending the scheduling order deadline to allow Plaintiff to amend his pleading. First, Plaintiff's explanation for not timely seeking leave to amend is that he only learned of the Garcias' claims on April 22, 2015, and did not learn of them sooner because Plaintiff's period of employment with Defendants did not overlap with that of the

22

Garcias. (Dkt. # 26 at 1–2.) Plaintiff did not file the motion, however, until June 19, 2015, nearly two months later. Given that the deadline for amending pleadings had already passed when the Garcias' claims were discovered, it is unclear why Plaintiff waited almost two additional months before seeking to join their claims. The Court further notes that this action had been live for over ten months before the Garcias sought to join it.

Second, the proposed amendment is not important to Plaintiff's case, as he can proceed with his action just as well without the Garcias as additional plaintiffs. Third, allowing the amendment would prejudice Defendants by requiring them to incur the expense of taking additional depositions and reopening discovery with regard to the Garcias' claims. While Plaintiff argues that Defendants would incur these costs anyway if the Garcias were to bring their claims in a separate action, joining the Garcias would also increase costs by delaying the resolution of this action, which would otherwise be ready to proceed to trial. Finally, this prejudice could not be cured by a continuance. While the Court could continue the trial setting to ensure a proper opportunity to investigate and defend against the Garcias' new claims, the continuance would do nothing to offset the additional costs of discovery and the delay in resolving this action.

The Court therefore finds that Plaintiff has not shown good cause to amend his complaint after the expiration of the scheduling order deadline. The

Court accordingly **DENIES** Plaintiff's Motion for Leave to File Third Amended Complaint (Dkt. # 24).

<u>CONCLUSION</u>

For the foregoing reasons, the Court **DENIES** Defendants' Motion for Partial Summary Judgment (Dkt. # 27) and **DENIES** Plaintiff's Motion for Leave to File Third Amended Complaint (Dkt. # 24).

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, September 28, 2015.

_____

David Alan Ezra
Senior United States Distict Judge

24